RECEIVED

JUL 1 0 2013

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| ANDREW MCBRIDE and NANCY MCBRIDE | CIVIL ACTION NO. 13-377 |
| VERSUS | JUDGE TRIMBLE |
| MEDTRONIC, INC. | MAGISTRATE JUDGE KIRK |

---

<u>MEMORANDUM RULING</u>

Before the court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by defendant Medtronic, Inc. ("Medtronic") in the above-captioned case.[1]  For the reasons expressed below, the court also finds that plaintiffs' claims should be dismissed with prejudice and, accordingly, Medtronic's motion should be GRANTED in its entirety.  Finally, the court finds that plaintiff's purported motion for leave to amend does not constitute a motion to amend within the meaning of the Federal Rules of Civil Procedure or the Local Rules, as announced by the Fifth Circuit Court of Appeals in <u>United States ex rel. Willard v. Humana Health Plan of Texas, Inc.</u>, 336 F.3d 375, 387 (5th Cir. 2003).[2]

I.      Relevant Facts

Plaintiffs are Andrew McBride and his wife, Nancy, who assert claims against Medtronic as the manufacturer of the SynchroMed II Model 8637-20 Infusion Pump ("Synchromed II").[3]

---

[1] R. 8.
[2] Incorporated in plaintiff's memorandum in opposition to plaintiff's motion to dismiss (R. 15) at p. 10.
[3] R. 1-3 at ¶ 5.

Plaintiffs allege that, at the recommendation of his treating physician, a SynchroMed II pump was surgically implanted in Mr. McBride on or about January 1, 2010 and that on or about December 26, 2011, Mr. McBride was subjected to an overdose of main medications as a result of the malfunction of the SynchroMed II pump, which necessitated hospitalization and subsequent removal of the infusion pump.[4]

Plaintiffs allege that Mr. McBride was subjected to serious and disabling injury as a result of the malfunction of the SynchroMed II pump, including overdose of the medications Sufentanil and Baclofen, additional surgery and a "serious staph infection."[5]  Plaintiffs assert claims for manufacturing defect, negligence and failure to warn, specifically citing the Louisiana Products Liability Act ("LPLA").[6]  Additionally, Mrs. McBride asserts a derivative claim for loss of consortium based on her husband's alleged injuries.[7]

Medtronic's motion asserts that plaintiffs' claims fail as a matter of law and that dismissal of all claims is appropriate upon its motion under Fed. R. Civ. P. 12(b)(6).  We address the law and arguments of the parties below.

## II.      Applicable Standard

Fed. R. Civ. P. 8(a) sets forth the standard of pleading applicable to suits filed in federal courts, requiring, inter alia, a "short and plain statement of the claim showing that the pleader is entitled to relief."[8]  Although "detailed factual allegations" are not required, the standard

---

[4] Id. at ¶¶ 2 – 4.
[5] Id. at ¶ 7.
[6] Id. at ¶8 – 9.
[7] Id. at ¶¶ 11 – 12.
[8] Fed. R. Civ. P. 8(a)(2).

does dictate that a plaintiff allege more than an unspecified wrong, an unspecified injury and an unspecified legal right to recovery.[9]

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true to 'state a claim for relief that is plausible on its face.' "[10] A complaint is "plausible on its face" when the plaintiff pleads facts which, when assumed to be true for the purpose of the motion, demonstrate a legally cognizable claim.[11] The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[12]

## III.    Analysis

### A. Medical Device Amendments

The Medical Device Amendments ("MDA") to the Federal Food, Drug and Cosmetic Act ("FDCA")[13] were promulgated in 1976 as a response to increasing state regulation of medical devices in the wake of the failure of the Dalkon Shield contraceptive device.[14] The MDA[15] brings the regulation of medical devices under the purview of the U.S. Food and Drug Administration ("FDA") and establishes three (3) classes of medical devices and corresponding regulatory requirements.[16] Class III premarket approval ("PMA") devices are subject to the

---

[9] Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).
[10] Harold H. Huggins Realty, Inc. v. FNC, Inc., 634 F.3d 787, 796 (5th Cir. 2011) citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).
[11] Id.
[12] Iqbal, 556 U.S.
[13] 31 U.S.C. § 301, et seq.
[14] Riegel v. Medtronic, Inc., 552 U.S. 312 (2008).
[15] 21 U.S.C. § 360c, et seq.
[16] Riegel, 552 U.S. at 316 – 17.

"greatest level of scrutiny" and are subjected to a rigorous FDA review process before they may be marketed.[17]

Medtronic, by motion filed contemporaneously with its motion to dismiss, also asks the court to take judicial notice of FDA websites which verify that the Synchromed II pump at issue in this case is a Class III PMA device.[18] There is no opposition to this motion and no argument from plaintiffs that the device at issue is not so classified.  For these reasons, the court finds that the motion should be granted and we hereby take judicial notice of the FDA information presented by Medtronic verifying that the Synchromed II pump is a Class III PMA device.

The MDA contains an express preemption provision which instructs that

> [e]xcept as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement —
>
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
>
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.[19]

Considering this provision, a court presented with the issue of preemption of state law regarding a particular medical device by the MDA must undertake a two-part analysis.  First, the court must determine whether or not the Federal Government has provided for the regulation of the device at issue.  If this question is answered affirmatively, the court must then determine whether or not the state law asserted establishes requirements for the device which are

---

[17] Id. at 317; Sons v. Medtronic, Inc., 2013 WL 164007 at *2 (W.D. La. 1/14/2013) quoting Buckman Co. v. Plaintiffs' Legal Comm., 531 U.S. 341, 344 (2001).
[18] R. 10.
[19] 21 U.S.C. § 360k (a).

"different from, or in addition to" those established in the MDA.[20]  If this second question is also answered affirmatively, the state law asserted is expressly preempted by the MDA.[21]

Since the MDA imposes significant premarket regulations on Class III devices, state law claims regarding Class III devices necessarily fulfill the first preemption criteria because the Federal Government has clearly regulated the standards applicable to such devices.[22] Moreover, jurisprudence establishes that state law claims sounding in negligence and strict liability necessarily seek to impose "requirements" that fulfill the second preemption criteria.[23] It is said that all but a very narrow class of state law claims, termed "parallel claims," are preempted by the MDA.[24]  Such claims "parallel" the federal regulations by providing a private right of action premised on the violation of federal regulations applicable to the device at issue.[25]

Medtronic's motion asserts that plaintiff's claims of manufacturing defect, negligence and failure to warn are all "subsumed" by the Louisiana Products Liability Act ("LPLA")[26] and, therefore, expressly preempted by the MDA.[27]

B.  Plaintiff's manufacturing defect claim

Plaintiffs' complaint alleges that Medtronic negligently introduced into the stream of commerce a product with a manufacturing defect "under the Louisiana Products Liability Act."[28]

---

[20] Riegel, 552 U.S. at 321 – 22;
[21] Id.
[22] Id. at 322 – 23.
[23] Id. at 323 – 24 citing Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996).
[24] Id. at 323.
[25] Id. at 323.
[26] La. R.S. 9:2800.51, et seq.
[27] R. 8-1 at pp. 11 – 14.
[28] R. 1-2 at ¶ 9.

Plaintiff's complaint also alleges that that Medtronic manufactured a product that was "unreasonably dangerous in construction or composition" because it "deviated in a material way from the manufacturer's specifications or performance standards[.]"[29]

Medtronic asserts that plaintiff's manufacturing defect claim is preempted by the MDA and, additionally, is so vague and conclusory as to warrant dismissal under Fed. R. Civ. P. 8.  The court's review of jurisprudence cited by both parties leads us to the conclusion that, while it may be possible to state a non-preempted claim for manufacturing defect in cases involving PMA devices,[30] such claim is not stated in the plaintiffs' complaint now before us.

Plaintiffs argue that, if the court finds that no manufacturing defect claim has been stated by their complaint, they be granted leave of court to amend.[31]  Medtronic opposes such grant of leave, asserting that plaintiffs' failure to specify the proposed amendment should foreclose amendment.  The court agrees.  A "bare request in an opposition to a motion to dismiss – without any indication of the particular grounds on which the amendment is sought – does not constitute a motion within the contemplation of Rule 15(a)."[32]  The court notes that, in this case, the motion before us was filed in February of 2013 and, as of the date of this ruling, some four (4) months later, no proper motion requesting leave to amend has been filed.  Moreover, if plaintiffs' motion were considered as having been actually made, it would, as argued by Medtronic, be deficient under Local Rule 7.6, as it lacks all three (3) requirements set forth in that rule.  Accordingly, the court finds that no motion for leave to amend has been made in this case.

---

[29] Id. at ¶ 8.
[30] Hughes v. Boston Scientific Corp., 631 F.3d 762 (5th Cir. 2011).
[31] R. 15 at p. 10.
[32] United States ex rel. Willard v. Humana Health Plan of Tex., Inc., 336 F.3d 375, 387 (5th Cir. 2003).

We now turn to whether or not plaintiffs' claim that the Synchromed II pump "deviated in a material way from the manufacturer's specifications or performance standards[,]" as alleged in their complaint, is preempted by the MDA.  Medtronic cites the recent opinion of the Western District Court in <u>Godfrey v. Advanced Neuromodulation Systems, Inc.</u>,[33] issued by Judge Minaldi, as instructive on this issue.   In <u>Godfrey</u>, the court acknowledged that it is possible to state a claim for manufacturing defect under the LPLA that is not preempted, but found that plaintiff's claim alleged only the violation of the manufacturer's own standards and specifications, in keeping with traditional LPLA claims and, as such, was preempted.   Citing <u>Gomez v. St. Jude Medical Daig Division, Inc.</u>,[34] the court pointed out that, in order to survive preemption in that narrow class of claims recognized under <u>Riegel</u>, the claim must be premised on the violation of specific federal law and must be causally connected to an injury giving rise to a state law right of action.  We agree with the reasoning employed by the <u>Godfrey</u> court.

In the case before us, plaintiffs allege only the violation of the manufacturer's own standards and, for that reason, we find plaintiff's LPLA manufacturing defect claim is preempted by the MDA because it is based on requirements different from those imposed by federal law.  For this reason, Medtronic's motion to dismiss this claim will be granted.

C.  **Plaintiffs' remaining claims**

Medtronic's motion asserts that plaintiffs' Louisiana law negligence and failure to warn claims are also expressly preempted under § 360k of the MDA.  Specifically, Medtronic points out jurisprudence uniformly interpreting Louisiana negligence law as imposing duties

---

[33] 2011 WL 7768092 (W.D. La. 4/4/2011).
[34] 442 F.3d 919 (5th Cir. 2006).

inconsistent with federal regulatory requirements and, thus, finding claims for negligence preempted.[35]  Similarly, Medtronic cites jurisprudence finding that claims alleging inadequacy of the warnings carried by a PMA device and approved by the FDA to be preempted, as such claims necessarily ask the court or jury to second-guess the findings of the FDA.[36]  Medtronic further asserts that plaintiffs' claims for failure to take reasonable steps to insure the safety of others and creating and exposing others to a hazardous condition are not cognizable under the LPLA and must be dismissed.  As noted by Medtronic, plaintiffs fail to address any of these claims in their memorandum in opposition to the motion to dismiss.

The MDA and underlying FDCA do not create a private right of action.[37]  Thus, a plaintiff, such as those now before this court, must assert claims for personal injury arising from the violation of such federal law, but must also show that such violation is causally related to an actionable injury under other federal or state law.  As we have discussed above, state law regarding personal injury which seeks to impose requirements on the manufacturer or device which are different from or in addition to federal regulations are preempted, leaving only a narrow path for the assertion of claims.

In Louisiana, plaintiffs asserting claims against manufacturers for harms allegedly caused by defective products are limited to the relief provided in the LPLA, which expressly instructs that it provides the

> exclusive theories of liability for manufacturers for damage caused by their products.  A claimant may not recover from a

---

[35] R. 8-1 at p. 17-18.
[36] Id.
[37] Medtronic, Inc. v. Lohr, 518 U.S. 470, 487 (1996).

manufacturer for damage caused by a product on the basis of any theory of liability that is not set forth in this Chapter.[38]

Under the LPLA, a plaintiff may only prove liability by demonstrating that a product was unreasonably dangerous in its: (1) construction of composition; (2) design; (3) inadequacy of warning; and (4) nonconformity to an express warranty.[39]

As noted by the Western District Court in Sons v. Medtronic, Inc.,[40] a very recent decision by this court, speaking through U.S. District Judge Haik, the LPLA does not recognize a claim for violation of FDA regulations and, thus, even if plaintiffs' complaint had alleged a claim for negligence based on the violation of federal regulations, such claim would not be cognizable under Louisiana law.[41]

Plaintiffs' failure to warn claim similarly fails.  Jurisprudence uniformly instructs that failure to warn claims regarding Class III PMA devices are preempted by the MDA because, by their very nature, they ask the fact finder to conclude that the warnings approved by the FDA were insufficient.[42]  Such a finding would clearly impose requirements different from those imposed by the FDCA and, as such, are impermissible.  Given these findings, the court will also grant Medtronic's motion as it pertains to plaintiffs' negligence and failure to warn claims.

Finally, we find that neither plaintiffs' failure to take steps to maintain and insure the safety of other claims, nor their creating and exposing others to a hazardous condition claim are cognizable under the LPLA, which creates only four (4) exclusive theories of liability. Medtronic's motion will also be granted as to these claims.

---

[38] La. R.S. 9:2800.52.

[39] Id. at § 2800.54(B)(1 – 4); Jefferson v. Lead Industries Ass'n., Inc., 106 F.3d 1245 (5th Cir. 1997).

[40] 2013 WL 164007 (W.D. La. 1/14/13).

[41] Id. at *6 (internal citations omitted); King v. Bayer Pharmaceuticals Corp., 2009 WL 2135223 (W.D. La. 2009).

[42] Hughes v. Boston Scientific Corp., 631 F.3d 762 (5th Cir. 2011); Gomez, 442 F.3d at 931; McQuiston v. Boston Scientific Corp., 2009 WL 4016120 (W.D.La. 2009); Cenac v. Hubbell, 2010 WL 4174573 (E.D.La. 2010).

**D.  Plaintiffs' loss of consortium claim**

Medtronic's motion finally asserts that, because of the failure of plaintiffs' underlying Louisiana law claims, plaintiff Nancy McBride's derivative loss of consortium claim must also be dismissed.  The court agrees.  There being no original Louisiana law claims remaining against Medtronic, there can be no derivative loss of consortium claim in this case.[43]  Medtronic's motion will be granted as to this claim.

**IV.  CONCLUSION**

The court has carefully considered the motion to dismiss before us and finds that it should be granted in full for the reasons set forth above.  Accordingly, all claims by plaintiffs against Medtronic in the above-captioned case will be denied and dismissed with prejudice. The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
July _10_, 2013

James T. Trimble, Jr.
United States District Judge

---

[43] Ferrell v. Fireman's Fund Ins. Co., 696 So.2d 569 (La. 1974); Engles v. City of New Orleans, 872 So.2d 1166 (La. App. 4 Cir. 2004).